2010, 5083, United Charity and Indemnity Company v. United States, Mr. Borres Otero. Good morning, Your Honor. Antonio Borres Otero, representing the appellant, United Charity and Indemnity Company. The issue before this Court is if a surety needs to give a notice of default to the government before the government is obligated to assume a role of stockholder as to the funds in the hands of the government for a construction contract. What if any notice, in your view, has to be provided by the surety? Because the notice serves the purpose of justifying to the government why it has to at least give an enhanced consideration to the interests of the surety. The surety, on this point, before a takeover agreement is signed, is not a party to that contract. That is clear. Therefore, the only way the government can justify giving some enhanced consideration and diverting monies to a third party, which is not in privacy of contract yet with the government, is because of the Equitable Subrogation Doctrine. Right. And doesn't the government, though, before it satisfies itself about equitable subrogation, have to assume that at least the contractor is likely, if not actually, in default, i.e., unable to complete the work of the contract? Yeah. Is that the criteria, that the government has to be assured that the contractor is not going to be able to complete the contract? Yes. So, in your letter of notification, which is, well, I write that it's this November 12, 2002 letter. Yes. Whatever it is, it's the only notification. I mean, what this says is that United Surety has taken control of the proceeds of the construction contract. Is it your view that that is telling the government that the contractor is in default or doesn't have the ability to complete the contract? Not by itself. Not, Your Honor. Okay. So, what is it in this letter that advised the government that the contractor was in default? No, there is nothing in the letter, Your Honor. Okay. So, what did this letter advise? Is it your view that they have to advise the government of something, and if so, what? It has to advise the government that the time has come to exercise some control of the project funds on behalf of the government. Our main point is that at that moment in time, the government had knowledge, not that the contractor was in default or that there was a potential default, but that the surety was already spending its own money to advance the interests of the government in the completion of the project. But all our cases say that's not enough, counsel. Now, here's the problem that we're wrestling with. The key to your right to step into the shoes of your contractor, which you have to do in order to have jurisdiction in the Court of Federal Claims under equitable subrogation, the key to that is you have to have declared in some form to the government that there either was a default or there was a likelihood of default. It's not enough for you to simply say we're making payments. At what point? The law is clear on that, isn't it? It is, Your Honor. Although there are some cases... So if the law is clear on that, at what point did you and your client view the contractor to have defaulted in such a way as to cause your surety to have to take over or become liable under the surety contract? When did that happen, in your view? In my view, it happened before the surety advised the government. It's time to withhold those payments other than following our instructions. Our whole point, Your Honor, is that once the government has knowledge, not that the contractor has defaulted or there is a no purpose... Let me come back for a second, Your Honor. The surety is entitled to invest money in the deal and to backstop the contractor without a default. Yes, Your Honor. That's right. That doesn't trigger the equitable subrogation. Or if I'm wrong about that, can you show me any case that says that just by payment of some funds to help them get along on a certain period of time that that would trigger... No, I haven't found no case to that point, however... We have cases that say otherwise, do we not? Yes. So what do you want us to do? However, the whole purpose of the notice of default is to advise the government that there is a very high possibility that the surety is going to intervene in the project and start investing its own funds. Well, I would disagree. No, that is not the purpose. The purpose of the notice is to inform the government that the surety is intervening or about to intervene because the contractor is going down, not that the surety is going to be making payments. Here's the problem, counsel. The problem is you're up on a 12b-6 dismissal for failure to state a claim in your complaint. I've read your complaint forwards and backwards. I don't find anything in your complaint indicating that you believed at the time you wrote that letter or, more importantly, at the time the government made its payment. I don't find anything in there that says clearly that you believed there was a pending default. Now, you don't have to use, although I'll discuss that with the government, the magic word default, but you certainly have to communicate that you believe that the contractor is about to go down, but where did you communicate? You didn't believe that, did you? Well, the fact is that the surety was investing money, and the surety is not a former party to the contractor. We agree the surety was investing money, but as Judge Post has pointed out, that's not good enough. Yes, Your Honor. And you agree. I agree. So what more can you tell us? However, the surety can comply with its obligation under the bond, not only by, if there is a defaulting contractor, by taking over the contractor and finishing. It can also finance, assist the contractor to complete the project. Her point is that once the surety starts doing that, even if there is not an actual default, the surety has some rights, equitable rights. Well, they might have some rights. Maybe the rights are against the contractor. I mean, if along the way something goes awry in the economy or something, and so they have to come up with a few thousand dollars to help the contractor get through a limited period, are you suggesting that that's enough to then require the government for that interim period to start paying the surety? If the surety makes a second, goes one step ahead, and directly asks the government to do so. Didn't the letter say that the surety has taken control of the contract by citing the article of the surety? Yes, the letter said that, but the purpose of the letter was to request the government to any future payments to be submitted to the surety and to the contractor. Wait a minute. The letter said that the surety has taken control of the proceeds of the construction contract. I'm not quite clear what that means. Well, it's taking control in the... It's not of the contract. It's of the proceeds of the contract. Of the proceeds. Right. The surety, the contractor was going to remain in the contract at that point in time. So there's no default and no... I mean, so this doesn't signal a potential default or a default, an actual default? Not necessarily, but it signals that the contractor was having trouble, that the contractor needed assistance, and that he could not by itself complete the contract, that the surety needed to intervene because, well, the letter doesn't say that, but that he's taking control of the way... But you agree that our case law, in terms of intermittent intervention by a surety in providing some funds to the contractor, that doesn't trigger the equitable subrogation, does it? That is true. We agree. However... Let me ask you just about this. I mean, I think this case is about $200,000, right? Yes, Your Honor. You, shortly after, a few months after, there was, in fact, a default. You took over. You got paid well over, was it $1 million or $2 million? Well, the surety invested over $2 million to complete the project. And that was okay? I mean, you got paid by the government, and that all worked out, right? Yes. Okay. So it's just this one limited payment? One payment, $200,000, yes. Thank you. So, let me just, in your complaint, paragraph 18, you say the project was completed at a net cost to USIC of $2,034,000, etc. You're not saying that you didn't get, that you're out-of-pocket $2 million? Yes, that's what we're saying, Your Honor. Out-of-pocket, in excess of the balance of the contract. You didn't get paid by the government? Well, yes. The surety got the balance of the contract at the time it took over the contract. When it signed the takeover agreement, the balance at that time was about $300,000-something. Over and beyond that, the surety had to spend almost $2 million to complete the project. But you got paid for that? No, that was in compliance with the purpose of the bond. The surety completed the project. I thought your claim was for just the $200,000. One payment. No, no. We are not claiming the money that the surety paid out of its own pocket to complete the project. Right. In your view, the government has no obligation to pay you for that part of the surety. No, no. That was the surety obligation under the bond. Yeah, and you got paid for the bond you got. It was a big loss, but it was a loss. But that's not something that you... there's no quibble with you and the government that you're entitled to nothing more than the $200,000. $200,000, because we understand, like a... But the question is, you took a loss on this contract of $2 million. Yes. Yes, Your Honor. You never got paid that by the government. The government didn't need to pay that. Who did the government pay for the contract? The government had to pay somebody for the value of the contract. Most of the money went to the original contractor, about a little bit over $300,000. I don't remember the exact figure. It went to the surety. I see. Okay. I know. So the government got a $2 million post office for $300,000? I mean, the contract was for $2.4 million. The final cost of the post office was exceeded by almost $2 million, the original cost. Okay. So there was an overrun of $2 million, and you had to pick it up. Yes, Your Honor. Right. And there's no conscience about that. It was the obligation of the surety to do that. So you were eating that $2 million, and what you want is this $200,000 that they... Because the surety understands it had a right to that payment at that time. Okay. And that diminishes the losses, the $2 million in losses that the government, that the surety had. For the clarification. Okay. Our whole point, Your Honor, is that the way we see it, the notice of default advises the government there is a problem, there is potential default, the surety might have to intervene and spend those funds, its own funds. It might acquire an equitable right once it spends its own funds. Therefore, you need to be careful about how you handle that money. And what document did you send that conveyed that message? Not the whole message. We sent a letter demanding that control of that money on November 12, 2002. Our whole point is that this is not the case as the case law states that there was just a default. Because obviously, if there is a default, the surety is not necessarily obligated to take over the contract. It can even default on the bond. So just the assistance of default by itself doesn't force the government to do anything. Okay. Did you ever get any response from the government to that letter? Or did they just, when the time came, send the check to the contractor and its lender? No, as far as I know, there was no response to the November 12 letter. There was no inquiry about a conflict of instructions? Yes, there was an inquiry about a month before the payment was made, and there is a letter to that effect in the exhibits to the complaint. The contracting officer asked the contractor, I got a letter from the bank, from the Scotia Bank, where you also told me that United Surety wanted the payment to be sent to them, or to the name of the contractor and the United Surety. What should I do? Basically, the letter states. That was about a month before. They asked the contracting officer. They didn't ask the surety. I mean, they asked the contractor. I'm sorry, Dora. You're saying that the contracting officer inquired of the contractor. Yes, the contractor. But not of the surety. Not the surety. Well, you got a copy of that letter, right? You were CC'd on that letter, no? That letter, yes, is one of the exhibits to the brief. Yes, so at the same time they sent a letter to the contractor making this inquiry, they gave you a copy of the letter so that you were aware of it, you were aware of the question being asked and to whom it was being asked. That's the February 4th letter? Yes, Your Honor. It doesn't show a copy to you, but you did get one? I take that back, Your Honor. I don't know if the surety got a copy of that letter. The October 17th letter from Manco shows a copy to you, but the February 4th letter, I don't see a CC to you. I take that back, Your Honor. I don't know if that letter was copied to the surety. Okay. All right. Thank you. Any more questions? No more questions.  Thank you, Mr. Barrasotero. Thank you, Your Honor. Mr. Regner. May it please the Court, Jeffrey Regner on behalf of the United States. The surety's failure to provide notice in 2002 prevents its claim today, and the reason why is that the notice of default matters, and it's more than just conveying information. It actually changes the relationship between the surety and the government during the ongoing project. Mr. Regner, let me ask you a couple of questions about that point. Is it the government's view that you have to, that a surety, in order to convey that message properly, needs to say the magic word default and spell it D-E-F-A-U-L-T? Almost. That's like being almost pregnant. Either they do or they don't. Can you say something less than default? No. So you need the magic word. But it doesn't have to be in the letter that's being sent. In the American Fidelity case, it's an example of that. But the word has to be there. The word default needs to be part of this, because you've got to give the contracting officer something that will change its direction in terms of how it's maintaining the project. Back to the good old English forms of complaint where you had to use the right words and 200-and-something years of improvement in civil litigation doesn't fit here? Your Honor, you have to have something that tells the contractor default. Well, we understand that.  Does it have to contain the word default? Yes. It does. It does, Your Honor, either directly or indirectly. And the American Fidelity case gives us a way of doing that. It can reference the California Civil Code, which happened in that case, which used the word default. Fortunately, it had the word default in it. Well, in that matter, to the court, because what was it that was going to put the contracting officer on notice  that it has under a default using the word default? Back to my second question, please, sir, if you will, and that is does there have to be an actual default at the time that communication? Most of us don't communicate by reference to the California Code, so let's assume for the moment that they didn't have the California Code in Puerto Rico at this time, so they should have used the word default according to the government. Do you have to say there has been a default or can you say there may be a pending default? Can you anticipate a possible default or does there have to be one? It could be an imminent default, Your Honor, and that is it may not have happened today, but it's a foregone conclusion that it's going to happen. You might know something on Friday night that's going to happen Monday morning and it's going to be a default. Construction projects are messy. How about if you don't know for sure? It could be a week or two. Friday to Monday may not do it, but maybe a couple of weeks. If it's going to happen, and that's the issue. But why is that? If the surety is in a position now of having to pay the subcontractors, even though there's no default, and that's quite a step for a contracting officer to declare default, but meanwhile the surety is paying money, the surety is concerned about its responsibilities, so it tells the government what they were told here, that under no circumstances can the surety protect its interest unless it either pushes the contractor into default if it fears that that might happen in the future. Yes, the surety has to. Before we're going to put the duty on the contracting officer to start directing payments to somebody other than a surety that's performing, somebody has to come in, and in this case it's the surety, and say that contractor is in default and that we the surety are because of that going to take over finishing this project. And can you tell us why that is so? Why we need default? Because without the default, the contracting officer has one choice, and that's because he's faced with a contractor in an ongoing construction project that is performing. The subcontractors are getting paid. The work is getting performed, and the contracting officer is obligated under the contract to pay that contractor. And before you can change that and put some other obligation on the contracting officer, say it's an obligation of the contracting officer to breach the contract, in effect, the surety needs to step in and be in the contractor's shoes for purposes of completing the contract. So even if the contractor is having a hard time and so the surety has to step in and pay him some money in the interim in the absence of the likelihood of default down the road, you're saying that doesn't alleviate the government's obligation to pay the initial contractor all the amounts that are due. What goes on between the contractor and the surety isn't the government's business, right? For the most part, that's correct, until the surety steps in and says we're doing something more because of the default. But the surety is a party to the contractor. It isn't as if this is some stranger from whom insurance was obtained. Well, the surety is not a party to the underlying construction contract. It's a party to the three-party bond relationship. All right. It isn't as if the government is unaware of the role of this surety in this arrangement or whether the contract would have been led in the first place without a surety. Well, the government only has a certain level of awareness. It's not aware of all the aspects of the relationship between the surety and the contractor. How much notice needs to be given before the government is put on notice that this is an important and serious statement from the surety that there are problems here and therefore your checks should be made jointly to the contractor and the surety, not to others, not to the contractor and the lender. Yes, I think I understand the question. What the surety has to do is step in, declare its principle on the bond under default, and then that would obligate it to step in and complete the contract. So the surety is obliged to place the contractor in default even though it may not be in full default if the surety is paying the subcontractors in order to keep the relationship alive without placing the contractor in default. The surety can make those payments and do all sorts of financial backing for the contractor without putting the contractor in default. But the second part of the issue, which is whether the government has an obligation because of what the surety is doing, is different. And it doesn't. The relationship between a surety and a contractor may have many layers. In this case, we're pretty sure it does because if you look at the indemnity agreement, which is dated 1996, that's about four years before the construction contract. There's a longstanding relationship between these two, and they may be joined at some level closely or not, but they certainly have the freedom to do what's necessary from a business standpoint to complete projects, to juggle finances, but that doesn't put an obligation on the government until the default is declared and the surety steps in the shoes of this contract. And you're telling us that the reason that is so, is it not, is because until such time as there's a default, the government remains obligated to the contractor to pay the contractor. In other words, if you had paid this $300,000 or whatever, $200,000, the government, in the absence of a default, would have to double pay. It would have to be paying the contractor, which it owes in the absence of a default, and it would have to be paying the surety. So the government would be obligated to pay double the amount of any contractor. That's right, and we'd be right here just with different parties. The government would still be here because it would have breached the contract to the contractor to pay a performing contractor the amount that it was owed on time. You're familiar with the concept of stakeholder. Yes. You're probably familiar with the fact that the stakeholder can always go into court, hence the stakeholder, and then plead the parties to the various contracts and say, I'm not sure what I'm supposed to do here. Would you please, dear judge, tell me, with all these parties in front of you, exactly who to pay? Yes, it happens every day, but it's not the kind of thing that makes sense in an ongoing construction project because for two reasons. One, the government's not a mere stakeholder in that circumstance, and certainly from a practical standpoint, we can't say, okay, get the guys off the roof. We're going to go to court and file an interpleader. But the government has a compelling interest in moving a construction project forward while it's ongoing, and as long as we're in that circumstance, the government needs to have the ability to follow, not do anything but follow the contract, but certainly follow the contract, move the project forward, and pay the contractor. Let's go to the letter of November 12th. And let me give you a little hypothetical to go with the November 12th letter. That was the letter from the surety to Mr. Rob Roberto Manca at the Postal Service, right? I'm going to rewrite it just a little bit, and you tell me what you think that might possibly mean. On behalf of the United Surety Indemnity Company, the insurance company that issued the payment, you are hereby requested that from this date on, all payments due to SELPA Construction Corporation under the construction contract for said project be made by checks payable to United Surety and Indemnity Company and SELPA Construction Company jointly because we are of the view that SELPA Construction Company looks like it may be coming bankrupt and will not be able to complete its contract, and therefore we request that payments be made jointly. Now, if the government had gotten that letter, is it your view that the government would be free to continue to pay SELPA Construction without regard to the surety's interests? Yes, as long as the SELPA Construction is still out there performing the work and paying its subcontractors. That is, there's no independent default. I mean, the scenario you suggest is that the bankruptcy is going to prevent SELPA from continuing to perform. That may or may not be the case, but from the contracting officer's perspective, unless the surety has declared the default and is stepping into the shoes of the contractor, all he has is that contractor, and he has to still deal with the contractor and pay that contractor. No obligation on the government to inquire further? Well, the contracting officer almost certainly would, but no, there's no obligation because the surety is still standing in the wings, unwilling to take on that obligation. Hasn't used the magic word default. He simply indicated all the conditions that constitute a default. Your argument is you can tell us all you want to about what's happening on the ground, but unless you declare a default in those words, none has occurred. That's right, but I think in real life it gets a little more complicated than that because the contracting officer, if the contractor is in fact in default and he's aware of it, okay, he's the contractor, you're in default, you don't have to give notice of something the government's already done. However, we're not there in that hypothetical that Your Honor gave me. Well, that takes us back then to the letter of October 17th, which is actually a letter from the Postal Service, Robert Manka, to the contractor, SELFA, with a copy to the surety, right? And in that letter the post office says, enclosed are copies of recently received subcontractor requests for payment forwarded to the Postal Service for work they indicate they performed, but were not paid in association with the construction of the proposed post office. I have forwarded to each of the subcontractors copies of the payment and performance bonds, and the subcontractors are such and such. On October 17th, 2002, Mr. Manka was aware of the fact that the subs were not being paid and furthermore instructed the subs to contact the surety. Yes. Would a reasonable contracting officer on behalf of the government think something was going on? No, because… No. Well, I don't know… Having written this letter, he'd go to lunch and he'd say to his accountant, go ahead and pay the contractor, no problem. Well, he would have some ability to do different things, but he's doing the right thing here. He's forwarding the subcontractors the payment bond because that's their remedy. But even that circumstance falls short of what I think the surety is advocating here. This is a payment. What we have in this courtroom today is a performance bond dispute. What the surety is advocating here, if I understand it, is, hey, you guys were on notice. The least you could have done was inquire about what's happening on the ground. Now, you did inquire, but you asked the contractor. Well, that's asking the fox, how are the chickens doing today? Well, Your Honor, the chickens have chimed in. We know that Mr. Manka had that letter and the information about the subcontractors. If he believes that they weren't being paid, there's nothing more to ask. They're not being paid. Part of the problem as well is that this wasn't the only letter to the contracting officer. The lender, along with the contractor, also writes to the contracting officer to make a change. And so it isn't as if the contracting officer was just continuing to make a routine progress payment. He did make a joint payment. And why would the lender have gotten into the act unless there were some concern in terms of where this money would end up? Would it end up before a trustee in bankruptcy? Would the lender be protected? Would the surety be protected? And the government might or might not have made, it seems to me, a choice between them based on certain objective criteria. But without inquiry, full inquiry, it seems very strange to just proceed not quite as business as usual, but in one direction rather than the other. How does that fit in? Why, in fact, was one instruction accepted? There was no notice of default, I gather, in that letter either. No, you're correct. There was no notice of default, and the contractor wasn't in default at this period of time. And so the contracting officer was still in the same situation where he had to continue to deal with this contractor, and if the work is progressing, to pay that contractor. And that's what he did in this circumstance. What he didn't have in March of 2003 was a notice of default from the surety that would have given him the ability to do anything other than what he did. So what entitles the government to decide that they're going to protect the lender rather than the surety? Well, I'm not sure that that's what happened. In this case, what the record shows is that the contracting officer inquired not of the lender but of the contractor. Precisely. Right. What do you want me to do with this money? If I were the contractor, I'd rather have my bank paid perhaps than an insurance company. Quite possibly. The relationships are very complicated, but that is what the contractor wanted, and it was his money to spend because he had progressed the project and was due the payment. And so the contracting officer had to follow his contract and pay the contractor into whatever legitimate means that the contractor directs him to make the payment. I think that's an interesting point. If it was in fact his money to spend and he directs it to the bank rather than to the surety, then the only question but a very serious question is in fact whether the contracting officer was on notice that there were issues because it's the surety who is paying the subcontractors, not the lender. And we put the keys to that door in the hands of the surety, and all the surety has to do is step up, say the contractor is in default and we're going to take over from here, and that's what the surety in this case did not do. And that's why we believe the trial court should be affirmed. So we've got a lot of premature notices of default by sureties attempting to protect themselves based on how this law on your position evolves. Perhaps. I don't think that's what is going to happen here. I think the opposite is true. What we're looking at from the perspective of the government is how do we get these construction projects done? What the surety was doing here was saying we want the money. They're citing to this assignment, which we contend was not valid, but they're saying we want the money, but we don't want the obligation. We're going to continue with what we were doing before, but we're not going to take over and commit to complete this project by declaring our principal in default. And that's all the government needed was to know that somebody is in the shoes of that contractor besides that contractor, and that in March of 2003, at least, that didn't happen. There was a takeover agreement and so forth later, and the parties worked all that out. You could add to your argument, I think, by saying that the surety is a company that makes its money by engaging in these activities of backstopping contractors. They're not little people who aren't familiar with the law, and they ought to understand the relationship between the surety, the contractor, and the government as spelled out in our cases. And in the absence of taking clear action on the default, sorry, you can't hold government. Is that part of your argument? It is, Your Honor. There are no – this is not a case in which we have unsophisticated players. The players certainly know the law. They can take the steps they need to take to protect themselves. This surety made a gambit. They wanted to make a grab for the money without obligating itself to complete the contract, and we're saying no, that's not fair enough. But I don't think that's fair. If they actually have been paying the subcontractors, what is this grab for the money? Well, because they don't have to continue. Because along the course of a construction project, which is a messy undertaking, a surety may want to pay subcontractors or fund the contractor without declaring the contractor in default so that it doesn't take on the additional obligations and essentially let the contractor out from under its obligations. And so the surety can protect itself if it so chooses. Are you saying the surety has no obligation to complete the contract if there's a default? If there's a default, it absolutely does have an obligation to complete – well, it has choices, but one of those certainly is to complete the contract or to pay for the completion of the contract. Yes. Yes. Okay. Now, Mr. Boris Otero, you didn't save any rebuttal time, but if you need a minute or two, we'll hear from you. Yes, Your Honor. Thank you very much. The only thing that was allowing this contract to proceed to completion at the time that payment was made was the surety. That payment was not only a gift – was not intended to be a gift to the surety, but it was to mitigate the losses that the surety already was having on behalf of the government. At that time, according to the communication one week after the payment, it clearly stated that the contractor had informed the government that the surety was paying the payroll and was paying the suppliers. You eventually declared a default. Eventually a default was declared and the surety spent $2 million. And you entered into the takeover. Yes, Your Honor. Okay. Any more questions? Good. Thank you. Thank you both. The case is taken under submission. That concludes this morning's cases that have been argued.